NICHOLAS REGGIO & another *vs.* DOMINICO BRAGGIOTTI & another.

The measure of damages, in an action brought for a breach of an implied warranty of the genuineness of an article sold as opium, is the value of an article corresponding to the warranty, deducting the value, if any thing, of the article sold ; and if the vendor has, in the mean time, sold the article with a like warranty, the sum paid on a judgment obtained against him, in an action brought by his vendee for a breach of that warranty, is *primâ facie* evidence of the amount which he can recover of his vendor; and, if he gave notice to his vendor of the commencement of that action, he may also recover his taxable costs therein : but he can in no case recover counsel fees paid for the defence thereof.

In this action, which was trespass on the case for a breach of warranty on the sale of opium by the defendants to the plaintiffs, tried before *Fletcher*, J., the declaration, besides the common counts, alleged that the defendants, on the 1st of April, 1845, in consideration that the plaintiff would and did agree to accept a consignment from them of eleven chests of opium, and to sell the same on the joint account of the plaintiffs and defendants, and would pay the defendants the sum of £490 sterling, for one undivided half thereof, and would account with and pay to the defendants one moiety of the net proceeds of the sales thereof, undertook and promised the plaintiffs, that the said eleven chests contained an article known in commerce as opium ; that the plaintiffs, on the 1st of May following, relying on the defendants' said undertaking. accepted the consignment; that, on the 15th of August, 1845, the plaintiffs sold and delivered the eleven chests con-

signed to them, to Henshaw, Ward & Company, for the price of $7,499; and, as a part of the contract of sale, undertook and promised the purchasers, that the said eleven cases contained an article known in commerce as opium; that the article contained therein, at each and all the times aforesaid, was not an article known in commerce as opium, but, on the contrary, was fraudulently prepared so as to resemble opium, and was of no value; that the plaintiffs afterwards paid the defendants the said sum of £490, and also accounted with and paid over to them one half of the net proceeds of the sale aforesaid, amounting to a large sum of money, namely, the sum of $5,000; that Henshaw, Ward & Company instituted a suit against the plaintiffs, for a breach of the warranty on the sale to them, and recovered judgment therein for the sum of $8,421.33, for damages and costs, which sum the plaintiffs, on the 2d of March, 1848, were obliged to, and did necessarily pay; that when, and as soon as the said suit was instituted, the plaintiffs gave notice thereof to the defendants, and specially requested them to take part in the defence of the same; and that the plaintiffs did afterwards incur large expenses and pay large sums of money, amounting in the whole to the sum of $1,000, in and about the costs, damages and expenses of the said suit.

The plaintiffs put in evidence the record of the judgment obtained against them by Henshaw, Ward & Company; and Henshaw, one of the plaintiffs in that suit, testified to the identity of the chests, and that there was no warranty other than that the article was sold as opium. He testified also, that the article purchased remained in the possession of the purchasers for several weeks after the trial, and was then delivered to the plaintiffs.

The plaintiffs contended, that the record of the recovery in that suit, of the pendency of which due notice was given to the defendants in this suit, who had opportunity, and were repeatedly requested to defend the same, was conclusive upon the defendants of every fact found by the jury and necessary to the judgment therein, including that of the alleged falsity of the article sold as opium. And the court ruled that it was

evidence, but not conclusive, of the falsity of the article. And no other proof, as to the falsity of the article, was adduced by either party.

The plaintiffs also claimed a right to recover the amount paid by them as counsel fees, in defending themselves in said suit, amounting to $350, and other charges, to which the defendants' counsel objected; but the court ruled that they were recoverable in this action; and the amount was separately assessed by the jury, so that, if not allowed by the court, the same might be deducted from the verdict.

The jury returned a verdict for the plaintiffs, which was to be set aside and a new trial granted, or the case otherwise disposed of, as the law might require.

*C. G. Loring*, for the defendants.   This being a case of a warranty of genuineness only, and not of indemnity, and there being no fraud, nothing is recoverable but the price paid, and interest.   *Powell* v. *Smith*, 8 Johns. 249 ; *Greely* v. *Dow*, 2 Met. 176 ; *Copp* v. *McDugall*, 9 Mass. 1 ; *Henshaw* v. *Robins*, 9 Met. 83 ; *Penley* v. *Watts*, 7 Mees. & Welsb. 601.   The verdict should have been only for the amount paid by the plaintiffs for their half part, together with that remitted by them to the defendants for their half part and half profits, and should not have included the half profits made by the plaintiffs on the sale to Henshaw, Ward & Company.   *Armstrong* v. *Percy*, 5 Wend. 535, 539, and cases above cited.   The cases in which costs have been allowed, are most, if not all of them, of express warranty, or of warranty of title where the vendor knew that he had none.   At any rate, counsel fees should not have been allowed.   *Leffingwell* v. *Elliott*, 10 Pick. 204 ; *Guild* v. *Guild*, 2 Met. 229 ; *Wynn* v. *Brooke*, 5 Rawle, 106, 109.

*B. R. Curtis*, for the plaintiffs, to the point that the counsel fees expended and costs incurred in the former suit were recoverable in this, cited *Coolidge* v. *Brigham*, 5 Met. 68; *Swett* v. *Patrick*, 3 Fairf. 9 ; *Williams* v. *Wetherbee*, 2 Aiken, 329; *Lewis* v. *Peake*, 7 Taunt. 153 ; *Pennell* v. *Woodburn*, 7 Car. & P. 117; *Wrightup* v. *Chamberlain*, 7 Scott, 598 ; Sedgw. on Damages, (1st ed.) 171, 289 to 301.

SHAW, C. J.   The first question to be decided in this case

relates to the amount which the plaintiffs are entitled to recover upon the original warranty, implied in the sale of the article to them as opium. That they are entitled to one half of the value is admitted; but the sum paid by Henshaw, Ward & Company was a large advance on the cost. Shall they be allowed one half of that?

A warranty binds the party entering into it to repay the difference between the actual value of the article sold, and that of an article corresponding to the warranty, or the whole value, if it prove worthless. Now the difficulty in the question arises from the uncertain meaning of the term " value." If it were the rule, that the price paid to the warrantor is the measure of the value, and that any loss on a subsequent sale by the vendee is not recoverable, this difficulty would be removed. *Primâ facie*, the price first paid for the article is good evidence of its value, in one sense. But the value is not the same to both parties; and no merchant would make a purchase unless the goods bought were worth more to him than the amount he pays for them. In this country, the established rule, in relation to damages in such actions, is, that the plaintiff may recover what he can show that he has actually lost. If the article is wholly worthless, then he shall recover what would have been its value to himself at the time of the warranty, had it corresponded with the terms of the warranty; and a subsequent sale is evidence of its value to him. In this case, the sale to Henshaw, Ward & Company was competent evidence of the market value of the opium, and, if satisfactory and uncontrolled, was conclusive upon the jury in regard to the amount to be recovered; not because they paid that sum, and the plaintiffs repaid it upon their warranty, but because that measures the actual loss sustained by them. The effect of this evidence varies in relation to different kinds of property. A second sale of a horse, for example, (and many of the English cases, in which this question is discussed relate to such property,) is not a good test of its value. The second vendor estimates, in fixing a price, his expenses in keeping the animal, and putting him in a suitable condition for sale. The English cases draw a nice distinction between

loss from the failure of a warranty, and the loss of a good bargain, and hold that the latter is not admissible as an element of damages. *Clare* v. *Maynard*, 6 Ad. & El. 519, and 7 Car. & P. 741. But still, the prevalence of authority in England is, that a second sale is evidence, though not conclusive, of the value, and admissible simply as one mode of ascertaining it.

The plaintiffs, then, as no evidence was offered in relation to the value of the opium, to control that introduced by them, are entitled to recover one half the amount paid to Henshaw, Ward & Company. As they gave notice to the defendants of the pendency of the first action, they are also entitled to recover their taxable costs. See *Coolidge* v. *Brigham*, 5 Met. 68. But the counsel fees cannot be allowed. These are expenses incurred by the party for his own satisfaction, and they vary so much with the character and distinction of the counsel, that it would be dangerous to permit him to impose such a charge upon an opponent; and the law measures the expenses incurred in the management of a suit by the taxable costs. The verdict must be amended in accordance with this opinion, and judgment entered upon it for the plaintiffs.